IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CONTROL SOLUTIONS, INC.,

    Plaintiff,

                                   3:15-CV-748-PK

                                   FINDINGS AND
v.                                  RECOMMENDATION

MICRODAQ.COM, INC., and DOES 1-10,

    Defendants.

PAPAK, Magistrate Judge:

    Plaintiff Control Solutions, Inc. ("CSI"), brought this action against defendant MicroDAQ.com, Inc. ("MicroDAQ"), and ten Doe defendants in the Circuit Court of the State of Oregon for the County of Columbia on April 3, 2015. MicroDAQ removed CSI's action to this court effective May 1, 2015. CSI subsequently amended its complaint in this court effective May 21, 2015. By and through its amended complaint, CSI alleges MicroDAQ's liability under Oregon statutory law for unlawful business practices in two separate counts and for trademark

Page 1 - FINDINGS AND RECOMMENDATION

counterfeiting in three separate counts, under Oregon common law for interference with prospective business relations, for intentional interference with economic relations, and for trademark infringement, and under federal statutory law for trademark infringement, false designation of origin, and misrepresentation. In connection with those claims, CSI seeks actual damages in excess of $1,200,000 plus trebling of damages, award of its litigation costs, disgorgement of MicroDAQ's profits, declaratory judgment that MicroDAQ's complained-of conduct was unlawful, and injunctive relief to prevent further such conduct. This court has subject-matter jurisdiction over CSI's action pursuant to 28 U.S.C. § 1332 based on the complete diversity of the parties and the amount in controversy, and additionally has federal question jurisdiction over CSI's federal claims pursuant to 28 U.S.C. § 1331 and in the absence of diversity jurisdiction could properly exercise supplemental subject-matter jurisdiction over CSI's state-law claims pursuant to 28 U.S.C. § 1367.

Now before the court is MicroDAQ's motion (#17) to dismiss CSI's claims against it for lack of personal jurisdiction. I have considered the motion, all of the pleadings and papers on file, and oral argument on behalf of the parties. For the reasons set forth below, MicroDAQ's motion should be granted.

## LEGAL STANDARD

A motion to dismiss for lack of personal jurisdiction is governed by Federal Civil Procedure Rule 12(b)(2). *See* Fed. R. Civ. P. 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008), *citing Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). In evaluating the defendant's motion, "[t]he court

Page 2 - FINDINGS AND RECOMMENDATION

may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *citing Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If the court decides the motion based on the pleadings and affidavits submitted by the parties without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Id., quoting Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In the absence of such an evidentiary hearing, the court accepts uncontroverted allegations contained within the plaintiff's complaint as true, and resolves conflicts between statements contained within the parties' affidavits in the plaintiff's favor. *See id.*

## FACTUAL BACKGROUND

### I. The Parties

Plaintiff CSI is an Oregon corporation with its principal place of business in St. Helens, Oregon. CSI is in the business of selling calibrated thermometers and temperature data logging devices.

Defendant MicroDAQ is a New Hampshire corporation with its principal place of business in Contoocook, New Hampshire. MicroDAQ is also in the business, *inter alia*, of selling calibrated thermometers and temperature data logging devices. CSI offers no allegation regarding the identities of the Doe defendants or of their role, if any, in the conduct underlying CSI's claims.

## II.  The Parties' Dispute[1]

CSI claims common law trademark, service mark, and trade name rights and protection in certain phrases and combinations of words, including its website address "www.vfcdataloggers.com," variants of its company name including "Control Solutions" and "Control Solutions, Inc.," and names or designations of its products, including "VFC 5000," "VFC 5000 TP," and "VFC 5000 TP Kit."  CSI has attempted to register the mark "vfcdataloggers.com," to date unsuccessfully.

Beginning in October 2013, MicroDAQ began using Google Adwords for purposes of one or more internet advertising campaigns.  During the course of such a campaign, when an internet user conducts a Google search utilizing any of certain keywords specified by the advertiser, a targeted advertisement not saliently distinguishable from an ordinary search result appears on the user's screen among the ordinary Google search results, generally at the top of the list of such results.  MicroDAQ's Adwords campaigns launched in October 2013 predominantly relied on keywords related to the Center for Disease Control's "Vaccines For Children" program; among the keywords relied upon were CSI's foredescribed marks and/or trade names.  Thus, during the course of MicroDAQ's campaigns launched in October 2013, an internet user's search for CSI's proprietary product the "VFC 5000 TP Kit" would yield, in addition to (and above) ordinary search results including chiefly CSI's website and products, an apparent "result" purporting to reference CSI's product but in fact including a hyperlink to MicroDAQ's website

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the allegations of plaintiff CSI's complaint, of any matters incorporated by reference therein, of any matters properly subject to judicial notice, and of the parties' evidentiary proffers in the light most favorable to CSI, on the assumption that each of CSI's allegations is accurate and resolving any factual conflict in the parties' evidentiary proffers in CSI's favor.

Page 4 - FINDINGS AND RECOMMENDATION

and purchasing system, with no link to CSI's website or to any of its products. MicroDAQ has never offered any of CSI's products for sale to the public, on its website or otherwise.

On or around February 28, 2015, CSI learned of MicroDAQ's Google Adwords campaigns and discovered that the campaigns relied in part on CSI's marks and/or trade names. On March 10, 2015, CSI sent MicroDAQ a letter demanding that it cease and desist all such Adword campaigns. On March 11, 2015, MicroDAQ's Sales & Marketing Manager replied to CSI's letter, conceding that MicroDAQ had been running two such campaigns, asserting that he had been unaware of the campaigns, apologizing for the use of CSI-related keywords in the campaigns, and asserting that the campaigns had been shut down.

Each of CSI's claims herein arises out of MicroDAQ's use of CSI-related keywords in connection with Google Adword internet advertising campaigns as described above.

MicroDAQ offers the declaration testimony of its founder and president, Philip Reeder, that over the course of its Google Adwords campaigns, it made only a single sale resulting from a Google search using one of CSI's marks or trade names (specifically, a search for "vfc-5000"). Reeder declares that the resulting purchase was for two of MicroDAQ's temperature data loggers to a Tennessee company in March 2015, that the sale price was in total $305, and that the purchaser subsequently returned the data loggers for a refund. Reeder further declares that MicroDAQ has no physical presence in Oregon, has never owned or leased property in Oregon, has no employees in Oregon, has never had a bank account in Oregon, has never registered or become licensed to do business in Oregon, has never paid taxes in Oregon, and has never undertaken any advertising campaign specifically directed at potential customers based in Oregon (other, presumably, than its reliance on keywords related to Oregon-based CSI and its products in

Page 5 - FINDINGS AND RECOMMENDATION

connection with its Adwords campaigns between October 2013 and March 2015). Reeder further declares that over the past three years MicroDAQ has made approximately $80,000 in annual sales to Oregon-based customers in connection with all of its product lines, that such sales represent approximately 1.6% of MicroDAQ's total annual sales, and that MicroDAQ's total sales over the past three years to Oregon-based customers in connection solely with its product lines in which it competes directly with CSI have amounted to $939. A large proportion of MicroDAQ's sales to Oregon customers have been to municipalities and state agencies.

## ANALYSIS

As noted above, MicroDAQ challenges this court's personal jurisdiction over it. "When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015, *citing Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Oregon's long-arm statute creates a standard co-extensive with federal jurisdictional standards, *see* Or. R. Civ. P. 4L, so a federal court sitting in the District of Oregon may exercise personal jurisdiction wherever it is possible to do so within the limits of federal constitutional due process, *see, e.g., Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).

Federal due process jurisprudence requires that, to be subject to the personal jurisdiction of a federal court, a nonresident defendant must have at least "'minimum contacts'" with the court's forum state such that "the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004), *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Two forms of personal jurisdiction are available for application to a nonresident defendant: general

Page 6 - FINDINGS AND RECOMMENDATION

personal jurisdiction and specific personal jurisdiction.

"For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in continuous and systematic general business contacts . . . that approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801, *quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) and *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.*, *citing Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986).

Where a corporate defendant is neither headquartered nor incorporated in the forum state, for a district court's exercise of general personal jurisdiction over it to be proper, its general business contacts with that state must be so continuous and systematic "as to render it essentially at home" there. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014), *quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011), *citing International Shoe*, 326 U.S. at 317; *see also id.* at 760-762. The United States Supreme Court has emphasized that general personal jurisdiction under such circumstances would be "an exceptional case," *id.* at 761 n. 19, and should be based not "solely on the magnitude of the defendant's in-state contacts" but rather on "an appraisal of a corporation's activities in their entirety, nationwide and worldwide," *id.* at 762 n. 20; *see also id.* ("[a] corporation that operates in many places can scarcely be deemed at home in all of them").

CSI argues that MicroDAQ's general business contacts with Oregon are sufficient to permit the exercise of general personal jurisdiction over it in this district. CSI notes that

Page 7 - FINDINGS AND RECOMMENDATION

MicroDAQ has been making sales to Oregon customers since 2008, and that over the past three years its Oregon sales have averaged approximately $80,000 annually. In addition, CSI notes that because many of MicroDAQ's Oregon sales are to municipal bodies, and argues that because those bodies are subject to state regulatory law in connection with their purchases from private vendors, MicroDAQ effectively avails itself of the protection of Oregon law in connection with each such sale. On that basis, CSI argues that it would be reasonable to hale MicroDAQ into court in Oregon on grounds of general personal jurisdiction.

CSI misconstrues the standard applicable to general personal jurisdiction. MicroDAQ's Oregon sales constitute only 1.6% of its total annual sales. Those sales, notwithstanding that many of them are to Oregon municipal bodies subject to state regulatory law, considered together with MicroDAQ's conduct in utilizing keywords relating to Oregon-based CSI, its website, and its products, are patently insufficient to render MicroDAQ "at home" in Oregon rather than in New Hampshire (where it is incorporated and headquartered, where its employees are, where its bank accounts are, and where it conducts its business). *See, e.g., Daimler AG*, 134 S. Ct. at 762 n. 20. This court therefore may not properly exercise general personal jurisdiction over MicroDAQ.

The courts of the Ninth Circuit apply a three-pronged test for determining whether, in connection with a given claim, the exercise of specific personal jurisdiction over a nonresident defendant could be proper:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum . . . ; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's

Page 8 - FINDINGS AND RECOMMENDATION

forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802, *quoting Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). The plaintiff bears the burden of satisfying the first two prongs of the test, whereupon the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*, *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

In the context of cases that sound primarily in contract, the Ninth Circuit applies a "purposeful availment" analysis to determine whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" and thereby satisfying the first prong of the three-pronged test. *Schwarzenegger*, 374 F.3d at 802, *quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In the context of cases – like this one, *see, e.g., International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 915 (9th Cir. 1980) – that sound primarily in tort, to determine whether the first prong of the three-pronged minimum-contacts test is satisfied the courts of the Ninth Circuit employ a three-part "effects" test derived from *Calder v. Jones*, 465 U.S. 783, 789 (1984), which requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "The requirement is but a test for determining the more fundamental issue of whether a 'defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" *Id.*, *quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In applying the *Calder* effects test, the courts are required to "look[] to the defendant's

Page 9 - FINDINGS AND RECOMMENDATION

contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). That is, the out-of-state defendant's relationship with the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State," *id.* (emphasis original), *quoting Burger King*, 471 U.S. at 475, and the defendant's link with the forum state cannot be based solely on the defendant's conduct directed toward the plaintiff, notwithstanding that the plaintiff is a forum-state resident, or otherwise solely on the plaintiff's own contacts with the forum state, *see id.* at 1122-1123. "Thus, a 'mere injury to a forum resident is not a sufficient connection to the forum.' . . . Rather, 'an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.'" *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015), *quoting Walden*, 134 S. Ct. at 1125.

The second prong of the three-pronged minimum-contacts test for specific personal jurisdiction requires that the plaintiff's claim arise out of the nonresident defendant's forum-related activities. *See Boschetto*, 539 F.3d at 1016. Moreover, it has long been settled law in the Ninth Circuit that "[w]here. . . a plaintiff raises two [or more] separate causes of action, the court must have in personam jurisdiction over the defendant with respect to each claim." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1289, n. 8 (9th Cir. 1977), *citing* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1588, at p. 816 (1971).

At the third prong of the specific personal jurisdiction test, the burden shifts to the defendant to present a "compelling case" to rebut the presumption that the exercise of specific personal jurisdiction would be reasonable. *See id.*

> In determining reasonableness, th[e] [courts of the Ninth] circuit examine[] seven factors: the extent of purposeful interjection; the burden on the defendant to

Page 10 - FINDINGS AND RECOMMENDATION

> defend the suit in the chosen forum; the extent of conflict with the sovereignty of the defendant's state; the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

*Shute v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir. 1990), *citing Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir. 1987). "The court[s] must balance the seven factors to determine whether the exercise of jurisdiction would be reasonable." *Id.*, *citing British-American*, 828 F.2d at 1442.

MicroDAQ challenges CSI's ability to satisfy the first two prongs of the three-prong minimum-contacts test which, as noted above, together require that the plaintiff's claims arise out of or relate to conduct purposefully directed into the forum state, conduct constituting a transaction consummated with the forum state, or conduct constituting purposeful availment of the privilege of conducting business within the forum state. *See Schwarzenegger*, 374 F.3d at 802. Because CSI's claims all sound in tort, and because CSI's claims to not arise out of or relate to any of MicroDAQ's transactions consummated with any Oregon municipality, the question whether MicroDAQ purposefully directed its conduct into Oregon is determined by the metric of the *Calder* effects test; MicroDAQ specifically argues that, in light of *Walden, supra*, and *Picot, supra*, CSI cannot satisfy the "expressly aimed at the forum state" element of the three-part *Calder* effects test by pointing to the conduct underlying CSI's claims. CSI argues in response that by employing keywords relating to Oregon-incorporated and -headquartered CSI, its website, and its products, MicroDAQ expressly targeted CSI and by so doing "expressly aimed" tortious misconduct into Oregon, where CSI is located. CSI argues that such aiming is sufficient to satisfy the *Calder* effects test as that test was articulated in pre-*Walden* Ninth Circuit

Page 11 - FINDINGS AND RECOMMENDATION

jurisprudence such as, *e.g.*, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087-1088 (9th Cir. 2000) (requiring only express aiming at a forum resident for satisfaction of the second element of the *Calder* effects test).

I agree with CSI that, prior to *Walden*, MicroDAQ's alleged conduct in expressly aiming intentional tortious misconduct at a forum resident likely would have been sufficient to satisfy the express aiming requirement of the *Calder* effects test. However, I likewise agree with MicroDAQ that, post-*Walden*, express aiming at a forum resident is jurisdictionally relevant only insofar as it constitutes a single contact with the forum state, and is insufficient without more to satisfy the express aiming requirement, which requires contacts created by the defendant directly with the forum state, and not merely with a forum-state resident. *See Walden*, 134 S. Ct. at 1122-1123, 1125; *see also Picot*, 780 F.3d at 1214. This court is bound to follow the guidance of *Walden* and *Picot*, and therefore may not properly exercise specific personal jurisdiction over MicroDAQ, whose alleged tortious misconduct was directed at CSI but not otherwise at, or into, the State of Oregon.

Because in consequence of its inability to satisfy the express aiming requirement of the *Calder* effects test CSI cannot meet its burden to establish purposeful direction prong of the three-pronged minimum-contacts test, this court need not analyze the third prong of the minimum-contacts test, relating to whether exercise of personal jurisdiction over the out-of-state defendant would comport with fair play and substantial justice.

In the alternative to denial of MicroDAQ's motion, CSI requests leave of court to conduct discovery bearing on the personal jurisdiction issue, and additionally requests that the court defer further proceedings in connection with MicroDAQ's motion while such discovery is ongoing.

Page 12 - FINDINGS AND RECOMMENDATION

However, neither in CSI's opposition memorandum nor at oral argument has CSI identified any discoverable facts that could support modification of the foregoing conclusions. There being no grounds to support the conclusion that to grant such leave would not be futile, CSI's alternative request for leave to conduct jurisdictional discovery should be denied.

Because this court cannot properly exercise personal jurisdiction over MicroDAQ, MicroDAQ's motion should be granted and CSI's claims against it should be dismissed without prejudice. In addition, because CSI's complaint contains no allegations of tortious misconduct by the Doe defendants, and because the record contains no evidence to support the conclusion that this court could properly exercise personal jurisdiction over those defendants, CSI's claims against the Doe defendants should likewise be dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, MicroDAQ's motion (#17) to dismiss should be granted, and CSI's claims should be dismissed without prejudice in their entirety. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

///

///

///

Page 13 - FINDINGS AND RECOMMENDATION

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 30th day of July, 2015.

Honorable Paul Papak
United States Magistrate Judge